In the Matter of ALFRED J. HEMLOCK, an Attorney, Respondent.

ASSOCIATION OF THE BAR OF THE CITY OF NEW YORK, Petitioner.

In the Matter of HARRY HOFFER, an Attorney, Respondent.

ASSOCIATION OF THE BAR OF THE CITY OF NEW YORK, Petitioner.

First Department, May 20, 1976

*John G. Bonomi* of counsel *(Oscar J. Cohen* with him on the brief), for petitioner.

*Charles S. Desmond* for respondent.

*Per Curiam.* Both respondents have been convicted in the United States District Court for the Southern District of New York of the crime of conspiracy to violate certain Federal statutes which, under New York law, would be characterized as a conspiracy to commit grand larceny in the second degree, a class A misdemeanor. Their convictions were affirmed by the United States Court of Appeals for the Second Circuit (494 F2d 145) and certiorari to the Supreme Court of the United States was denied (419 US 828). Since the petition articulates conviction of a Class A misdemeanor, disbarment is not automatic (cf. Judiciary Law, § 90, subd 2 with Judiciary Law, § 90, subd 4), and we directed that a hearing be held.

The operative facts resulting in respondents' convictions date back to 1967; they are here but briefly summarized. The conspiracy of which respondents were accused was against Maria Dominguez, the daughter of the former president of the Dominican Republic, Rafael Trujillo. Maria was the controlling shareholder of a Luxembourg corporation known as Planinvest. Maria, who in 1967 was a resident of Madrid, Spain, came to the United States seeking assistance in leaving Spain permanently. She was introduced to Hemlock through John Frank, an attorney, and another person known to her as Steve Miller.

Hemlock went to Spain and met with Maria's husband for a purported business negotiation. While the husband was thus diverted, Maria was spirited out of the country.

Hemlock assisted Maria in her business affairs. When she acquiesced to invest moneys in Canadian realty, Hemlock arranged for the purchase of two parcels, each of which was first sold to separate corporations (one named Splindian and the other Columbia) formed immediately prior to the purchase and then immediately resold to Planinvest at a highly inflated price. The profits, which amounted to close to one million dollars, were divided amongst Hemlock, Frank and Miller. Hoffer, the second respondent in this disciplinary proceeding, formed the two purchasing corporations and was involved in the closings on both pieces of property. He also arranged for the transfer of funds to the purchasing corporations. Maria disclaimed knowledge of either of these transactions; however, her signatures on the various authorizing documents were not forged. She did state that she was always given numerous

papers to sign, though she did not know the nature of these documents. She trusted her counselors implicitly.

The respondents did not testify at the trial. At the hearing, the Referee allowed them to testify on their own behalf. Hemlock stated that he had been promised orally by Frank that, if Maria were successfully removed from Spain, he would get a fee of one million dollars, which he would split with Frank and Miller. The payment of this "fee" could not be made directly in order to hide the fact that Maria was the true owner of Planinvest, since her property was subject to confiscation by the Dominican Republic. The fee was set by Frank and Hemlock without consultation with or approval by Maria.

Hoffer testified that he knew nothing of the fees, received no part of them, and was merely the scrivener for Hemlock. Documentary evidence not available at the time of the criminal trial was introduced at the hearing before the Referee, which showed that Hoffer had no access to the funds of the Columbia or Splindian corporations.

The Referee found that Hemlock did not "overcome the presumption of guilt created by his conviction in the criminal case," and further found that Hoffer did.

We concur in the findings of fact of the Referee with regard to the relative culpability of Hemlock and Hoffer. We find that Hemlock was a "laboring oar" of this conspiracy. He was aware of the fraud being perpetrated against Maria, he set his fee for services allegedly rendered without the knowledge or acquiescence of his client, and directed the funneling of funds in a fashion clearly indicating an active participation in the conspiracy against Maria.

We further find that, while Hoffer was a named partner in the firm of Hemlock, List, Hoffer & Becker, it was Hemlock who set firm policy, established fees, and directed the other attorneys in their work. Hoffer, while nominally a partner, functioned rather as an amanuensis, and we consider these factors in mitigation of the sanction to be imposed against Hoffer. However, we do not agree with the legal conclusions of the Referee couched as they are in terms of overcoming the presumption of guilt created by a criminal conviction.

The teaching of *Matter of Levy* (37 NY2d 279) is that the issue of guilt based on a prior conviction may not be relitigated; however, competent evidence may be adduced to explain or mitigate the significance of a criminal conviction.

To the extent, therefore, that the Referee allowed Hemlock and Hoffer to testify, and to the extent that he considered the evidence adduced at the hearing in mitigation of the significance of their criminal convictions, we confirm the report of the Referee. The evidence adduced at a disciplinary proceeding held subsequent to a misdemeanor conviction cannot, however, be used collaterally to attack that conviction.

We find that Hemlock's culpability was shown in the trial in Federal court and that the hearing before the Referee adduced no evidence in mitigation of the crime of which Hemlock was found guilty. We find that his acts of malfeasance amounted to a betrayal of his duties to his client, and he is unworthy of continuing as a member of the legal profession. He should therefore be disbarred.

As to Hoffer, while we cannot overlook his criminal conviction, we consider in mitigation his employment relationship with Hemlock and the fact that he was not intended to benefit from the funds taken. We find that the sanction to be imposed upon Hoffer should be suspension for a period of three years.

STEVENS, P. J., MARKEWICH, KUPFERMAN, LANE and NUNEZ, JJ., concur.

Respondent Hemlock's name struck from the roll of attorneys and counselors at law in the State of New York, effective June 21, 1976.

Respondent Hoffer suspended from practice as an attorney and counselor at law in the State of New York for a period of three years, effective June 21, 1976.